No. 23-50869

# In the United States Court of Appeals for the Fifth Circuit

State of Texas,
           *Plaintiff-Appellant*,

v.

United States Department of Homeland Security; Alejandro Mayorkas, Secretary, U.S. Department of Homeland Security; United States Customs and Border Protection; United States Border Patrol; Troy Miller, Acting Commissioner, U.S. Customs and Border Protection; Jason Owens, in his official capacity as Chief of the U.S. Border Patrol; Juan Bernal, in his official capacity as Acting Chief Patrol Agent, Del Rio Sector United States Border Patrol,
           *Defendants-Appellees.*

On Appeal from the United States District Court for the
Western District of Texas, Del Rio Division, 2:23-cv-00055-AM

**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S OPPOSED EMERGENCY MOTION FOR AN INJUNCTION PENDING APPEAL AND FOR A TEMPORARY ADMINISTRATIVE INJUNCTION**

*(Counsel Listed on Inside Cover)*

...

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Aaron L. Nielson
Solicitor General
Aaron.Nielson@oag.texas.gov

Ari Cuenin
Deputy Solicitor General

J. Andrew Mackenzie
Assistant Attorney General

Counsel for Plaintiff-Appellant

INTRODUCTION

Defendants relitigate countless issues they lost before the district court instead of engaging the single issue that prevented granting a preliminary injunction.

For example, Defendants portray (at 7-9) their destruction of property as authorized, despite the district court's finding that they "cannot claim the statutory duties they are so obviously derelict in enforcing . . . require the destruction of the Plaintiff's property." App. P. 28. They dispute (at 20) Texas's claim that c-wire deters entry, despite the district court's finding that it "serves as a deterrent—an effective one at that." App. P. 8. They insist (at 1-2, 6) they cut Texas's fence only when necessary to secure the border or to render lifesaving aid, despite elsewhere asserting authority to cut wire "without restraint," App. L. 207, and video evidence showing that "[a]t no point are the migrants interviewed, questioned as to citizenship, or in any way hindered in their progress into the United States," App. P. 9, 27 & n.13. And they claim (at 3, 6) that Texas exacerbated the dangers of unlawful river crossings, even though "the very emergencies the Defendants assert make it necessary to cut the wire are of their own creation." App. P. 9. Suffice it to say, "[t]he factual findings rendered by the district court must be left undisturbed unless clearly erroneous." *Direct Biologics, L.L.C. v. McQueen*, 63 F.4th 1015, 1020 (5th Cir 2023) (citation omitted).

Defendants, moreover, devote barely 2 pages to the relevant issue: 5 U.S.C. § 702's waiver of sovereign immunity for nonmonetary relief. But for its misunderstanding of this provision, the district court would have converted its TRO

to a preliminary injunction. Defendants' discussion (at 10-12) makes no textual argument and buries contrary authority in a footnote.

In response, Defendants shift tactics again, pivoting to arguments they lost below and some they affirmatively waived. Before the district court, Defendants disavowed reliance on both preemption principles generally and on *Arizona v. United States*, 567 U.S. 387 (2012), in particular, insisting that this case is "better" classed under the intergovernmental immunity heading. App. L. 55-56. Because the district court's factual findings obliterate that argument (at 12-14), however, Defendants now seek to resurrect preemption, leading with *Arizona* (at 1) and invoking "[p]reemption principles" in a footnote (at 13 n.6). Next, they point (at 18-19) to the INA's anti-injunction provision, even though Texas never asked the district court to "enjoin or restrain" the operation of any immigration law.

Rather than entertaining Defendants' continuing efforts to change the subject, the Court should grant Texas's motion for an injunction pending appeal.

## ARGUMENT

### I. Texas Will Likely Prevail on Appeal.

### A. Destroying Texas's fences is unlawful and may be enjoined.

#### 1. The district court's detailed findings are not clearly erroneous and amply support a likelihood of success on the state-law claims.

Defendants nowhere dispute that their ongoing conduct violates Texas tort law. Mot. 12-13. Instead, Defendants attack the district court's factual findings, attempting to litigate a case not before the Court. *First*, they convey the impression (at 1-2) that the use of c-wire at the border is a novel—even dangerous—stratagem

2

for stemming unlawful migration. Not only has Texas used c-wire for years, but it has done so *in collaboration with* federal authorities. "[S]tate agents have given concertina wire to federal agents to assist them in deploying wire fencing, and federal agents have given concertina wire to state agents to assist them in doing the same." App. B. (Storrud Decl.) ¶4. The district court was thus correct to find that "[b]y all accounts, Border Patrol is grateful for the assistance of Texas law enforcement [in placing concertina wire], and the evidence shows the parties work cooperatively across the state, including in El Paso and the Rio Grande Valley." App. P. 8.

*Second*, Defendants assert (at 8) that their "[a]gents cut the wire to facilitate apprehension, inspection, and processing of migrants or to provide medical assistance." But the district court correctly discredited these claims as "disingenuous." *Id.* at 10; *see also id.* at 9 (describing Texas's video evidence); *id.* at 27 & n.13 (documenting evidence showing how on one occasion almost 2,000 migrants got away through Defendants' breaches); *id.* at 28 ("The Defendants cannot . . . seek judicial blessing of practices that both directly contravene those same statutory obligations and require the destruction of the Plaintiff's property. Any justifications resting on the Defendants' illusory and life-threatening 'inspection' and 'apprehension' practices, or lack thereof, fail.").

*Third*, Defendants repeat their "cynical argument[]" that Texas's c-wire adds unnecessary risks to the already treacherous situation at the border. *Id.* at 10. But it is Defendants who risk migrants' lives by luring families to make perilous river crossings. *Id.* at 9. The district court thus found Defendants responsible for "creati[ng]" "the very emergencies the Defendants assert make it necessary to cut

3

the wire" outside "a port of entry." *Id.* In evaluating Plaintiff's likelihood of success, this Court must respect these adverse findings on Defendants' credibility and motivation. *See Direct Biologics*, 63 F.4th at 1020.

Defendants also argue (at 7-9) that federal law authorizes their actions. But the district court specifically explained that Defendants' "destruction of [Texas's] property" cannot be justified based on "statutory duties they are so obviously derelict in enforcing." App. P. 28. Regardless, that some agency action may hypothetically be lawful does not defeat an *ultra vires* claim where, as here, other action is plainly unlawful. *See Apter v. DHHS*, 80 F.4th 579, 588 (5th Cir. 2023) (even where agency had authority to communicate with the public, the lack of authority to issue medical advice allowed *ultra vires* claim). Defendants claim they can destroy Texas's property "without restraint." App. L. 207. But Defendants cannot "seek judicial blessing of practices that both directly contravene those same statutory obligations and require the destruction of the Plaintiff's property." App. P. 28.

### 2. Congress waived federal sovereign immunity for Texas's claims.

Defendants argue alternatively that even if their conduct is unlawful, federal law "permits [only] money damages, not prospective relief." Resp. 11. But § 702 broadly waives sovereign immunity for any suit in federal court "seeking relief other than money damages." An injunction pending appeal is appropriate given that the district court's outlier holding—admittedly departing from several federal circuits (App. P. 18 n.9)—was the only thing that stood in the way of relief.

Defendants do not offer any textual argument for narrowing § 702. Despite invoking (at 10) the principle that any ambiguity in a waiver of sovereign immunity should be construed narrowly, they point to no ambiguity here. *Contra Sebelius v. Cloer*, 569 U.S. 369, 380-81 (2013). Nor do they dispute that accepting their argument would bring this Court into conflict with at least two other Circuits—though they bury this concession in a footnote (at 11 n.4). Despite having now briefed this issue four times, Defendants have never identified a single case that adopts their position. That alone is reason enough to grant an injunction pending appeal.

Defendants also ignore the language they quote from this Court—that "the FTCA provides 'the exclusive remedy *for compensation* for a federal employee's tortious acts.'" Resp. 11 (quoting *McGuire* 137 F.3d 321, 324 (5th Cir. 1998)) (emphasis added). And the Supreme Court case they cite (at 12) hurts rather than helps their argument that the FTCA's damages remedy impliedly precludes an injunction. A "similar subject matter"—*i.e.*, torts—"is not itself sufficient" to "trigger a remedial statute's preclusive effect." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 223 (2012). Here, Texas "is bringing a different claim, seeking different relief, from the kind the [FTCA] addresses." *Id.* at 222. The district court rightly held that money damages could not adequately redress ongoing, willful destruction of property; instead, "the only appropriate remedy would be injunctive relief." App. P. 13 n.7.

On whether § 702's waiver applies to state-law claims at all, Defendants also misconstrue the caselaw. They cite (at 10) *In re Supreme Beef Processors, Inc.*, 468 F.3d 248 (5th Cir. 2006) (en banc), which addressed an entirely different waiver of

5

immunity for bankruptcy claims. *Id.* at 253-54. And they rely on a concurring opinion from another circuit, which is binding nowhere, Resp. 11 (citing *El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 854 (D.C. Cir. 2010) (en banc) (Kavanaugh, J. concurring in the judgment))—and indeed has been rejected by that very circuit. *See Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 617-18, 620 (D.C. Cir. 2017). The Third Circuit, moreover, also permitted a group of States to press state-law claims against the federal government using § 702. *See Treasurer of N.J. v. U.S. Dep't of Treasury*, 684 F.3d 382, 400-01 (3d Cir. 2012). Two precedential opinions supporting Texas's view is two more than Defendants have ever identified for their position.

### 3. Defendants' intergovernmental-immunity argument fails.

Alternatively, Defendants invoke (at 12-13) intergovernmental immunity. But the notion that state law can never "retard" federal operations *has* been repudiated by the Supreme Court. *United States v. Washington*, 596 U.S. 832, 838 (2022). Federal agents within the confines of a state are generally subject to state law—including criminal law, *United States ex rel. Drury v. Lewis*, 200 U.S. 1, 3, 7-8 (1906); tort law, *Johnson v. Maryland*, 254 U.S. 51, 56 (1920); property laws, *Wilkie v. Robbins*, 551 U.S. 537, 560 (2007); and even traffic laws, *Hall v. Virginia*, 105 S.E. 551, 552 (Va. 1921); *North Carolina v. Ivory*, 906 F.2d 999, 1001-02 (4th Cir. 1990); *Sanchez v. United States*, 803 F. Supp. 2d 1066, 1070-71 (C.D. Cal. 2011).

Intergovernmental immunity's exception to this general rule applies only where a state (1) "regulate[s] the United States directly" or (2) "discriminate[s] against the Federal Government or those with whom it deals." *Washington*, 596 U.S. at 838.

Nothing about this case satisfies that standard. Texas's assertion of its own "rights [as] an ordinary proprietor" under state tort law, *Fort Leavenworth Ry. v. Lowe*, 114 U.S. 525, 527 (1885), is not "acting in a regulatory rather than a proprietary mode," *Am. Trucking Ass'ns v. City of Los Angeles*, 569 U.S. 641, 649-50 (2013). And the invocation of generally applicable tort principles in no way "singl[es] out the Federal Government for unfavorable treatment." *Washington*, 596 U.S. at 834.

### B. The APA claims are likely to succeed as well.

Defendants contend (at 14-18) that Texas cannot succeed on its APA claims for want of final agency action. This contention runs headlong into *Apter*, 80 F.4th at 589-91, the binding Circuit precedent cited by Texas in its Motion (at 20) but ignored in Defendants' response. At a minimum, Texas is likely to prevail on its *ultra vires* APA claim under *Apter*.

Defendants dispute whether there is a policy here. The district court, however, cited Defendants' "reiterat[ing] the same policy in identical terms," App. P. 30 n.14, and explained that "[r]egular and frequent occurrence of the incidents in question between September 20, 2023, and the entering of the TRO, regardless of exigency, and the fact of communications between lower- and higher-ranking DHS officers regarding wire-cutting in the Del Rio Sector raise the possibility that an unwritten 'policy, practice, or pattern' exists," *id.* at 30-31. Such evidence more than suffices at the preliminary-injunction stage, as Texas has explained. Mot. 19-20.

Equally unavailing is the passing suggestion (at 16)—not reached by the district court—that destroying Texas's property is somehow committed to agency discretion by law. Defendants' policy is not an unreviewable lack of immigration

7

enforcement under 5 U.S.C. § 701(a)(2). The agency action here—a fence-cutting policy that Defendants' own counsel conceded exists "at least in" Eagle Pass, App. L. 217—consists in blessing the destruction of property. Such agency rules—as opposed to "orders" or "one-off nonenforcement decisions"—do not ever fall within the APA's unreviewability exception. *Texas v. Biden*, 20 F.4th 928, 983-84 (5th Cir. 2021), *rev'd on other grounds*, 597 U.S. 785 (2022). And contrary to Defendants' protest (at 17) that no law could sensibly be consulted *ex ante* here, tort law routinely applies to law-enforcement officials' "on-the-spot judgments." Defendants refuse to confront those standards. *See* App. U. 12 n.2.

The Court should also reject any suggestion (at 17) that cutting Texas's fencing was lawful. Defendants have denied that their policy is arbitrary and capricious, but they ignore district court findings that their actions could not be justified by medical exigency or law-enforcement responsibilities. App. P. 27-29. Because courts "may uphold agency action only on the grounds that the agency invoked when it took the action," Defendants actions violate the APA. *Michigan v. EPA*, 576 U.S. 743, 758 (2015). Further, "a regulation is arbitrary and capricious if the agency 'failed to consider an important aspect of the problem,'" which "includes, of course, considering the costs and benefits associated with the regulation." *Mexican Gulf Fishing Co. v. U.S. Dep't of Com.*, 60 F.4th 956, 973 (5th Cir. 2023) (citation omitted). Defendants' complete failure to consider the benefits of deterrence is not reasoned decisionmaking. *Cf.* App. H. 38-39; App. T. 20.

8

### C. The INA's jurisdictional limitations are inapplicable here.

Although the district court never reached the issue, Defendants argue that an injunction would violate 8 U.S.C. § 1252(f)(1). That statute restricts lower courts from enjoining the operation of certain INA provisions "governing the inspection, apprehension, examination, and removal of aliens." *Garland v. Aleman Gonzalez*, 596 U.S. 543, 549-50 (2022). Defendants contend (at 18-19) that their "agents are discharging their responsibilities under § 1225," a covered provision, and that Texas is merely complaining that Defendants are enforcing relevant statutes unlawfully. But this argument fails for reasons the district court identified elsewhere: All Texas prays for here is an order "that [its] property not be destroyed"; it is "not trying to stop [Defendants] from doing [their] job." App. L. 213.

Defendants tacitly acknowledge (at 19) that § 1252(f)(1) does *not* prohibit injunctions with a "collateral effect on the operation" of covered immigration statute. *See Aleman Gonzalez*, 596 U.S. at 553 n.4. But at the preliminary-injunction hearing, all Defendants' counsel could muster was that an injunction here "would have an effect." App. L. 41. If that suffices, § 1252(f)(1) really would "insulate" the "disgruntled CBP officer [who] might find it convenient to assault TMD soldiers based on his opinion that they make his job harder." *Compare* App. T. 9, *with* App. O. 12. *Aleman Gonzalez* rejects such unchecked federal power. Besides, Defendants' primary sources of purported statutory authority—8 U.S.C. § 1103(a)(3) and § 1357(a)(3)—fall outside § 1252(f)(1)'s INA cross-reference.

## II. Equitable Considerations Favor an Injunction Pending Appeal.

Given the district court's extensive explanation for why a TRO was justified, Defendants cannot seriously dispute that equitable considerations warrant an injunction pending appeal. They continue to quibble with the district court's consistent determination that Texas is suffering irreparable injury and that the balance of equities and public interest are in its favor. *Compare* Resp. 19-21, *with* App. P. 34. They maintain that "an injunction that permits wire-cutting only for emergencies in progress would often apply too late to render life-saving aid." Resp. 21. But the district court's order explicitly rejects this notion by holding that "the very emergencies the Defendants assert make it necessary to cut the wire are of their own creation," and that the claimed "prevention of possible future exigencies rests on far more dubious grounds as a justification for destroying the use of private property than the need to address actual, ongoing crises." App. P. 9, 29.

## Conclusion

The Court should grant an injunction pending appeal.

Respectfully submitted.

| | |
|---|---|
| Ken Paxton<br>Attorney General of Texas | Aaron L. Nielson<br>Solicitor General<br>Aaron.Nielson@oag.texas.gov |
| Brent Webster<br>First Assistant Attorney General | Ari Cuenin<br>Deputy Solicitor General |
| Office of the Attorney General<br>P.O. Box 12548 (MC 059)<br>Austin, Texas 78711-2548<br>Tel.: (512) 936-1700<br>Fax: (512) 474-2697 | J. Andrew Mackenzie<br>Assistant Attorney General<br><br>Counsel for Plaintiff-Appellant |

## CERTIFICATE OF SERVICE

On December 8, 2023, this document was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Aaron L. Nielson
AARON L. NIELSON

## CERTIFICATE OF COMPLIANCE

This motion complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,566 words, excluding the parts of the motion exempted by rule; and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Aaron L. Nielson
AARON L. NIELSON