No. 23-50869

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

STATE OF TEXAS,

*Plaintiff-Appellant*,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,

*Defendants-Appellees.*

## FEDERAL GOVERNMENT'S MOTION TO EXPEDITE APPEAL

Pursuant to 28 U.S.C. § 1657(a), Federal Rule of Appellate Procedure 27, and 5th Cir. R. 27.5 and 34.5, the federal government respectfully requests that the Court expedite briefing according to the following schedule:

| | |
|---|---|
| Texas's opening brief: | January 12, 2024 |
| Federal government's answering brief: | February 2, 2024 |
| Texas's reply brief: | February 12, 2024 |

The federal government further requests that the Court schedule oral argument as soon as possible after the close of briefing, to facilitate a decision as soon as practicable thereafter. *See* 5th Cir. R. 47.7 (calendaring priority for "actions for temporary or preliminary injunctive relief"). Texas opposes the relief requested and intends to file an opposition.

1. This case concerns concertina wire—a type of coiled razor wire—that Texas has installed on private land along the banks of the Rio Grande near Eagle Pass, Texas. Because the international border with Mexico is located in the river,

migrants who reach the wire are already in the United States, and the wire thus impedes federal Border Patrol agents from accessing migrants on U.S. soil. Those agents sometimes therefore cut or otherwise disturb the wire to perform their functions under federal immigration law. It is also sometimes necessary for agents to cut the wire to respond to a medical emergency, or to take proactive steps to prevent such an emergency from developing. Such action is permitted by federal law, *see, e.g.*, 8 U.S.C. § 1225(a) (directing the inspection of migrants who have not been admitted); *id.* § 1357 (granting Border Patrol agents warrantless access to private land within 25 miles of the border), and it is undisputed that Border Patrol agents have for decades similarly cut or moved locks and gates belonging to landowners when necessary to access the border. *See* D. Ct. Dkt. 57 at 22-23.

In this litigation, Texas sought a preliminary injunction requiring Border Patrol to stop cutting its concertina wire, arguing that such cutting violates Texas state tort law. *See* D. Ct. Dkt. 3. Although it had previously entered an ex parte temporary restraining order, *see* D. Ct. Dkt. 9, after hearing from the federal government and fully considering the matter, the district court denied the preliminary injunction on November 29, 2023, holding that the United States had not waived its sovereign immunity from lawsuits seeking injunctive relief under state tort law. *See* D. Ct. Dkt. 57.

2.     On December 4, 2023, Texas filed an emergency motion in this Court seeking an injunction pending appeal and a temporary administrative injunction. *See*

5th Cir. Dkt. 25. That afternoon, before the federal government filed a response, the motions panel entered temporary administrative relief, which the parties agreed had been intended to have the same geographic and substantive scope as the expired temporary restraining order. *See* 5th Cir. Dkt. 38-2; *see also* 5th Cir. Dkt. 40. Over two weeks later, on December 19, 2023, the motions panel entered an injunction pending appeal. *See* 5th Cir. Dkt. 49-2. The motions panel concluded that 5 U.S.C. § 702 waives the United States's sovereign immunity from lawsuits seeking injunctive relief under state tort law, *id.* at 7-11, and it rejected the government's more fundamental argument that under the Supremacy Clause, a plaintiff may not invoke state law to preclude a federal agent from performing lawful functions under federal law, *id.* at 11. It further rejected the government's argument that injunctive relief was barred by 8 U.S.C. § 1252(f)(1) in light of the requested injunction's effect on the federal government's apprehension, inspection, and processing of migrants under 8 U.S.C. § 1225(a). *Id.* Finally, the motions panel found that the equitable factors favored Texas, invoking the importance of "protections for property rights." *Id.* at 14. The panel thus relied on Texas state tort law to enjoin Border Patrol from "damaging, destroying, or otherwise interfering" with the concertina wire fence, except where necessary to address a medical emergency "as specified in the [temporary restraining order]." *Id.* at 14. Judge Haynes did not join the order and would have "sen[t] this case to a merits panel as an expedited appeal" with "an administrative stay for a brief

3

period" to "defer[] the question of the stay pending appeal" to the merits panel. *Id.* at 1 n.1.

  3. Courts "shall expedite the consideration of . . . any action for temporary or preliminary injunctive relief," as well as any action where "good cause" is shown. 28 U.S.C. § 1657(a); *see also* 5th Cir. R. 27.5 (court may expedite appeal for "good cause"); *id.* 34.5 (same). Good cause is "shown if a right under the Constitution of the United States or a Federal Statute . . . would be maintained in a factual context that indicates that a request for expedited consideration has merit." 28 U.S.C. § 1657(a).

  There is good cause to expedite this appeal. The federal government is subject to an injunction that prevents Border Patrol agents from exercising their longstanding statutory authority to disturb barriers to the border in order to perform their functions under federal immigration law. While the motions panel recounted one incident in which the district court concluded that "wire-cutting [was not] necessary to "'apprehend' or 'process' aliens," 5th Cir. Dkt. 49-2 at 6, it nowhere explained how an injunction preventing federal officials from disturbing physical barriers standing between them and the people they are charged with apprehending and inspecting does not interfere with the enforcement of federal immigration laws. In addition, although the injunction contains a limited exception allowing agents to cut the wire to respond to a medical emergency, the record contains undisputed evidence that by the time a medical emergency (such as drowning) is apparent, it may be too late for Border

Patrol to prevent death or serious injury. *See* 5th Cir. Dkt. 25-2 Ex. L 132 (undisputed testimony that it can take 10 to 30 minutes to cut through Texas's layers of wire).[1] The significance of the injunction's practical effects on federal law-enforcement officers' day-to-day conduct along the border alone warrants expedition.

Even beyond such on-the-ground impact, the motions panel's injunction requiring federal officials to comply with state tort law raises foundational constitutional questions meriting this Court's expeditious review. As the federal government will demonstrate on appeal, Texas's theory that its laws may properly control federal officials' discharge of their duties under federal law violates centuries of case law under the Supremacy Clause. The Supreme Court has long since explained that "even the most unquestionable and most universally applicable of state laws, such as those concerning murder, will not be allowed to control the conduct of a marshal of the United States acting under and in pursuance of the laws of the United States." *Johnson v. State of Maryland*, 254 U.S. 51, 56-57 (1920); *see also, e.g.*, *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 436 (1819); *Texas v. Kleinert*, 855 F.3d 305, 313 (5th

---

[1] The motions panel appeared to discount this concern, pointing to the district court's finding that Border Patrol agents have access to the river side of the wire fence from boats. 5th Cir. Dkt. 49-2 at 6. Yet it is uncontested that Border Patrol's marine resources in the area are limited, consisting of a few boats that can only carry three to six additional passengers each. *See* 5th Cir. Dkt. 25-2 Ex. L 129. Testimony also showed that it can take Border Patrol's boats approximately ten minutes to travel from the city boat ramp to locations where the wire has been cut, in addition to any delays associated with launching the boats from the city boat ramp in the first place. *See id.* at 130-31.

Cir. 2017). Texas's view that federal officials must conform their conduct to Texas law turns the Supremacy Clause on its head, and the injunction pending appeal reflecting that view represents irreparable harm per se to the federal government.

The schedule requested herein would not prejudice Texas, which has itself sought expedited relief in this case in both district court and this Court. Under the proposed schedule, more than six weeks would elapse between the date when Texas filed its notice of appeal and the due date of its opening brief, which is more time than this Court has granted appellants in recent expedition orders in other significant cases. *See, e.g.*, *United States v. Abbott*, No. 23-50632, Dkt. 46 (5th Cir. Sept. 13, 2023) (opening brief due fifteen days after docketing); *State of Missouri v. Biden*, No. 23-30445, Dkt. 37 (5th Cir. July 14, 2023) (opening brief due nineteen days after docketing); *Texas v. Biden*, No. 21-10806, Dkt. 65 (5th Cir. Aug. 23, 2021) (opening brief due four weeks after docketing).

4. The federal government therefore respectfully requests that the Court order that briefing proceed under the following schedule:

| | |
|---|---|
| Texas's opening brief: | January 12, 2024 |
| Federal government's answering brief: | February 2, 2024 |
| Texas's reply brief: | February 12, 2024 |

The government further requests that this Court schedule oral argument as soon as possible following the close of briefing.

5. Undersigned counsel contacted Texas's counsel prior to filing this motion. Texas opposes the relief requested and intends to file an opposition.

        Respectfully submitted,

        MELISSA N. PATTERSON
          /s/ Steven A. Myers
        STEVEN A. MYERS
         *Attorneys, Appellate Staff*
         *Civil Division*
         *U.S. Department of Justice*
         *950 Pennsylvania Ave., NW*
         *Washington, DC 20530*
         *202-305-8648*

Dated: December 21, 2023

## CERTIFICATE OF COMPLIANCE

I hereby certify that this motion complies with the requirements of Federal Rule of Appellate Procedure 27(d) because it has been prepared in 14-point Garamond, a proportionally spaced font. I further certify that this response complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) because it contains 1508 words according to the count of Microsoft Word.

*/s/ Steven A. Myers*
STEVEN A. MYERS
Counsel for Appellees

## CERTIFICATE OF SERVICE

I hereby certify that, on December 21, 2023, I electronically filed the foregoing motion with the Clerk of the Court by using the appellate CM/ECF system. I further certify that the participants in the case are CM/ECF users and that service will be accomplished by using the appellate CM/ECF system.

*/s/ Steven A. Myers*
STEVEN A. MYERS
Counsel for Appellees
