No. 23-50869

# In the United States Court of Appeals for the Fifth Circuit

State of Texas,
*Plaintiff-Appellant,*

v.

United States Department of Homeland Security; Alejandro Mayorkas, Secretary, U.S. Department of Homeland Security; United States Customs and Border Protection; United States Border Patrol; Troy Miller, Acting Commissioner, U.S. Customs and Border Protection; Jason Owens, in his official capacity as Chief of the U.S. Border Patrol; Juan Bernal, in his official capacity as Acting Chief Patrol Agent, Del Rio Sector United States Border Patrol,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Western District of Texas, Del Rio Division

**RESPONSE TO MOTION TO EXPEDITE THE APPEAL**

*(Counsel Listed on Inside Cover)*

| | |
|---|---|
| KEN PAXTON<br>Attorney General of Texas | AARON L. NIELSON<br>Solicitor General<br>Aaron.Nielson@oag.texas.gov |
| BRENT WEBSTER<br>First Assistant Attorney General | Ari Cuenin<br>Deputy Solicitor General |
| Office of the Attorney General<br>P.O. Box 12548 (MC 059)<br>Austin, Texas 78711-2548<br>Tel.: (512) 936-1700<br>Fax: (512) 474-2697 | J. Andrew Mackenzie<br>Assistant Attorney General<br><br>Counsel for Plaintiff-Appellant |

# Certificate of Interested Persons

No. 23-50869

State of Texas,

*Plaintiff-Appellant,*

v.

United States Department of Homeland Security; Alejandro Mayorkas, Secretary, U.S. Department of Homeland Security; United States Customs and Border Protection; United States Border Patrol; Troy Miller, Acting Commissioner, U.S. Customs and Border Protection; Jason Owens, in his official capacity as Chief of the U.S. Border Patrol; Juan Bernal, in his official capacity as Acting Chief Patrol Agent, Del Rio Sector United States Border Patrol,

*Defendants-Appellees.*

Under the fourth sentence of Fifth Circuit Rule 28.2.1, plaintiff-appellant, as a governmental party, needs not furnish a certificate of interested persons.

/s/ Aaron L. Nielson
Aaron L. Nielson
*Counsel of Record for Plaintiff-Appellant*

## Introduction

Texas sought an injunction pending appeal to prevent the U.S. Border Patrol from cutting, destroying, or otherwise interfering with concertina wire ("c-wire") fencing Texas has constructed along its southern border on land the State owns or with permission of the municipal or private landowner. The district court granted Texas a temporary restraining order after finding that Defendants' actions likely violated Texas's property rights. But the district court ruled that Defendants' sovereign immunity had not been waived under 5 U.S.C. § 702 and that the court was therefore barred from converting the TRO into a preliminary injunction.

Texas immediately appealed and sought an emergency injunction pending appeal. A motions panel granted a temporary administrative stay while considering the parties' pleadings. On December 19, 2023, following expedited pleadings from the parties on Texas's motion, the motions panel granted an injunction pending appeal. Consistent with the parties' agreements and the district court's previous rulings, the injunction pending appeal provides an exception for medical emergencies (the only exigency identified in this case):

> Defendants are ENJOINED during the pendency of this appeal from damaging, destroying, or otherwise interfering with Texas's c-wire fence in the vicinity of Eagle Pass, Texas, as indicated in Texas's complaint. As the parties have agreed, Defendants are permitted to cut or move the c-wire if necessary to address any medical emergency as specified in the TRO.

Order at 2. Of particular relevance here, the motions panel also specifically declined to "send this case to a merits panel as an expedited appeal." *Id.* at 2 n.1.

Defendants nevertheless ask this Court to expedite this appeal such that the abbreviated merits briefing period for Plaintiff's attorneys and support staff—but not for their own lawyers and support staff—will overlap with the Christmas and New Year's holidays, with oral argument to be heard shortly thereafter. Texas cannot feasibly comply with that schedule without significant hardship. Nor should it have to: a motions panel of this Court already considered expedited briefing and rejected it. Rather than seeking rehearing of that decision (as the rules allow), Defendants instead filed this motion. That is not procedurally appropriate. Regardless, Defendants offer no plausible basis to reconsider the panel's decision.[1]

Even putting aside the motion's procedural irregularity and failure to satisfy the demanding standard for rehearing, Defendants have not demonstrated good cause to fast-track these proceedings, and the motions panel correctly determined that Defendants' substantive arguments have little chance of success even in the ordinary course. This is particularly true because the motions panel went out of its way to tailor the scope of the injunction to safeguard against medical emergencies. Consistent with what they argued before the district court, however, Defendants continue to seek license to destroy property that is not theirs *whenever* they want. The Court thus should deny Defendants' motion as both procedurally improper and substantively meritless.

---

[1] It would be appropriate and expedient to route Defendants' motion to that panel, which best understands what its order means. *See* 5th Cir. R. 35 IOP & 40.

## Statement of Facts

As the district court documented at length, federal immigration officials persist in destroying Texas's property. In Eagle Pass, Texas deployed rolls of c-wire with the landowners' permission as part of Governor Greg Abbott's efforts to tackle illegal-entry hotspots. It is undisputed that both the federal government and Texas use c-wire for this purpose and that the two governments often collaborate on its use. Since September 2023, however, Defendants have cut and torn Texas's wire fencing in Eagle Pass to wave thousands of unlawful migrants into the interior of the country—without Texas's consent and in the absence of any medical exigency. Texas thus sought an injunction to prevent ongoing damage to its property.

Defendants responded by accelerating their damage to Texas's property. After Texas sought injunctive relief, Defendants brought in a hydraulic forklift to more efficiently rip Texas's c-wire fence out of the ground. App. I. 2.[2] Then, just 20 minutes after Texas sought a temporary restraining order, Defendants returned with another forklift to smash the fence into the ground. App. F. (Diaz Ortiz Decl.) ¶¶6-8. The district court granted a TRO while it considered Texas's motion for a preliminary injunction. App. K. With Defendants' consent, the district court later extended the TRO until November 29, 2023. App. N.

After holding several hearings and considering supplemental briefing, the district court called out Defendants' "culpable and duplicitous conduct" with respect to their destruction of Texas's property. App. P. 6, 28. The district court

---

[2] Citations to "App." herein refer to the exhibits filed in support of Texas's motion for an injunction pending appeal. 5th Cir. ECF No. 26.

also found that Defendants' destruction of Texas's property inflicts "irreparable harm" upon Texas and puts human lives in danger by enticing unlawful migrants to "undertake the dangerous task of crossing the river" rather than going to a formal port of entry. *Id.* at 9, 34. But "[d]espite making numerous fact findings supporting Texas's claims, the district court ruled"—based on a technical question of sovereign immunity—that it was powerless to convert Texas's TRO into a preliminary injunction. Order at 3. Specifically, the district court determined that despite Section 702's categorical waiver of sovereign immunity for injunctive remedies, Congress nonetheless implicitly retained immunity for state-law claims. App. P. 19.

Texas sought an injunction pending appeal after the district court denied Texas's motion for a preliminary injunction, just minutes before the TRO expired at 11:59 PM on November 29, 2023. Texas immediately appealed and sought an emergency injunction pending appeal or, alternatively, an immediate administrative injunction. Fed. R. App. P. 8(a)(2)(A)(ii); 5th Cir. R. 27.3. A panel of this Court granted administrative relief on December 4, 2023, while it considered Texas's motion. On December 19, 2023, the panel issued an injunction pending appeal after receiving expedited pleadings from all parties with respect to Texas's motion.

The motions panel concluded "that the district court legally erred with respect to sovereign immunity and that Texas has otherwise satisfied the factors under *Nken v. Holder*, 556 U.S. 418, 434 (2009)." Order at 2. The panel thus ordered that "Defendants are ENJOINED during the pendency of this appeal from damaging, destroying, or otherwise interfering with Texas's c-wire fence in the vicinity of Eagle Pass, Texas, as indicated in Texas's complaint." *Id.* The injunction also provides an

4

exception for medical emergencies: "As the parties have agreed, Defendants are permitted to cut or move the c-wire if necessary to address any medical emergency as specified in the TRO. *See* App. K at 4, 9-11 (Oct. 30, 2023)." *Id.*

Defendants now ask the Court to expedite this appeal. Notably, the motions panel expressly declined to do so. *See id.* at 2 n.1 (explaining that the panel decided not to "send this case to a merits panel as an expedited appeal" and not to "defer[] the question of the stay pending appeal to the oral argument merits panel"). Defendants, however, do not seek panel or en banc rehearing of that determination; instead, they filed a scheduling motion that barely mentions the fact that the motions panel already concluded that this appeal does not warrant expedited treatment.

## Summary of the Argument

The motion to expedite should be denied for at least three reasons.

*First*, it is procedurally improper. The motions panel has already resolved this issue. If Defendants are unhappy with the motions panel's decision, they should have sought rehearing of that decision. They have not done so, nor could they satisfy the demanding rehearing standard. Rather than giving Defendants a second bite at the apple, the Court should allow this case to proceed in the ordinary course.

*Second*, regardless, Defendants have not demonstrated "good cause" to expedite this appeal. 28 U.S.C. § 1657(a); *see also* Fed. R. App. P. 2. This is hardly an instance in which the Court should upend regular order to address exigent circumstances. As the motions panel's decision demonstrates, the status quo is uncut fences and respect for Texas's property rights. Per the parties' agreement, the injunction pending appeal already carves out an exception for Defendants to cut Texas's wire

5

to respond to medical emergencies as described by the district court's TRO. And it is undisputed that Defendants already can access both sides of the river, thus confirming that no exigency exists warranting expedited briefing.

*Third*, an expedited appeal is unlikely to result in the relief that Defendants seek because the motions panel correctly explained that Texas is likely to succeed on appeal. The district court made numerous findings of fact with respect to Defendants' conduct—findings that Defendants essentially ignore. The only reason the district court declined to convert its TRO into a preliminary injunction was its misapprehension about Section 702's immunity waiver. As the motions panel held, the district court erred in construing Section 702 and Texas is plainly entitled to a preliminary injunction. Given the motions panel's straightforward analysis and the fact that the motions panel's tailored injunction pending appeal already accounts for emergencies, there is simply no basis in law or fact to expedite briefing here.

## Argument

### I. Defendants' Motion is Procedurally Improper.

Defendants essentially ask the Court to reconsider the motions panel's determination that this case should not be expedited. *See* Order at 2 n.1. Yet they do not follow the proper procedures, nor do they attempt to satisfy the demanding standard for rehearing. Although Judge Haynes would have "sen[t] this case to a merits panel as an expedited appeal," the panel majority declined to do so. *Id.* As this Court's rules make plain, motions that seek reconsideration of panel rulings are "not favored" and may not be used for "reargument of the issue previously

presented." 5th Cir. R. 35.1, 40.2. Defendants identify no basis to depart from those settled principles. Their motion is thus procedurally improper and should be rejected for this reason alone. Regardless, even if Defendants had followed the Court's requirements for seeking rehearing, they do not satisfy the Court's demanding standard. After considering extensive briefing from the parties, the motions panel made its decision. That decision should be respected.

## II. There Is No "Good Cause" To Expedite This Appeal.

Notwithstanding the motions panel's determination, Defendants argue that there is "good cause" to expedite this appeal. Their argument is incorrect for two reasons. First, the motions panel's order already protects Defendants' interests. Second, expedited briefing over the holidays would create needless burdens.

### A. The injunction's medical-emergency exception already protects Defendants' asserted interests pending appeal.

Although there is no precise standard for "good cause" to expedite appeals, the Court has deemed it appropriate to do so when an order will have wide-ranging impacts on health and safety issues, *All. for Hippocratic Med. v. FDA*, No. 23-10362, 2023 WL 2913725, *1 (5th Cir. Apr. 12, 2023) (per curiam) (expediting appeal from order staying the effective date of the FDA's accelerated approval of mifepristone); will cause extraordinary disruptions, *Brown v. U.S. Dep't of Educ.*, No. 22-11115, ECF No. 75 (5th Cir. Nov. 30, 2022) (expediting appeal from vacatur of President Biden's $400 billion student-loan-forgiveness program); *Missouri v. Biden*, No. 23-30445, 2023 WL 5821788, *31 (5th Cir. Sept. 8, 2023) (per curiam) (noting expedited nature of appeal from injunction barring federal officials from engaging in large categories

7

of communications with social-media companies); or presents immediate and far-reaching issues with respect to federalism and international relations, *e.g.*, *United States v. Abbott*, No. 23-50632, ECF No. 36 (5th Cir. Sept. 11, 2023) (expediting appeal of order requiring the State to reposition floating barriers in the Rio Grande).

Here, none of those factors are present. In fact, given that the motions panel's order correctly reiterates that nothing in the injunction prevents Defendants from moving Texas's property to address a medical emergency (a point Texas has never contested), Defendants cannot identify any ongoing exigency necessitating departure from the ordinary briefing process. The status quo was restored by this Court's injunction pending appeal. *See, e.g.*, *Texas v. United States*, 40 F.4th 205, 220 (5th Cir. 2022) (per curiam) (defining the status quo as that which existed "absent the unlawful agency action"). And the status quo presents no exigency. Indeed, the United States has been barred by court order from destroying Texas's property since October 30, 2023—a prohibition that was extended in the district court *by agreement of the parties*—without incident. That Defendants themselves agreed to extend the TRO in the district court confirms that there is no exigency here.

Moreover, as the motions panel explained, the district court found that Defendants have cut "Texas's c-wire fence for purposes other than a medical emergency, inspection, or detention." Order at 14. Defendants have elsewhere asserted authority to cut Texas's wire "without restraint," App. L. 207, and video evidence shows that migrants entering through these cuts are not "interviewed, questioned as to citizenship, or in any way hindered in their progress into the United States," App. P. 9, 27 & n.13. Defendants gesture toward the dangers of unlawful

8

river crossings, Mot. 4, even though the district court found that "the very emergencies the Defendants assert make it necessary to cut the wire are of their own creation," *id.* at 9. As the district court explained, "[a]ny rational observer could not help but wonder why the Defendants do not just allow migrants to access the country at a port of entry. If agents are going to allow migrants to enter the country, and indeed facilitate their doing so, why make them undertake the dangerous task of crossing the river?" *Id.* Furthermore, the motions panel explained that the district court found as a factual matter that "Border Patrol agents already possess access to both sides of the fence," thus further confirming that it is often not even necessary to tamper with Texas's property to provide emergency assistance. Order at 6; *see also* App. P. 24.

Defendants nonetheless contend (at 4) that this Court's injunction pending appeal "prevents Border Patrol agents from exercising their longstanding statutory authority to disturb barriers to the border in order to perform their functions under federal immigration law." That assertion is flatly contrary to the district court's extensive factual findings. The district court found that "[n]o reasonable interpretation" of Defendants' statutory duties "can square with Border Patrol's conduct." App. P. 27. "The factual findings rendered by the district court must be left undisturbed unless clearly erroneous." *Direct Biologics, L.L.C. v. McQueen*, 63 F.4th 1015, 1020 (5th Cir. 2023) (cleaned up). Indeed, Defendants all but concede (at 5 n.1) that they can provide emergency relief to unlawful migrants should it ever be necessary; they just protest that doing so may require some reallocation of resources with respect to a narrow segment of the river. That is not remotely

9

sufficient to demonstrate good cause to expedite this appeal, let alone to revisit the motions panel's determination not to do so. This is particularly so, moreover, because the district court found that upholding the status quo by keeping the fencing intact will *prevent* "future exigencies" and that Defendants' deliberate destruction of Texas's property is making the situation more dangerous, not less. App. P. 29. Defendants do not address that finding of fact, let alone demonstrate that it is clearly erroneous.

### B. Expediting briefing would substantially burden Plaintiff.

The hardship imposed by Defendants' proposed expedited briefing schedule provides further reason to leave the motions panel's ruling undisturbed. As the motions panel can attest, Texas has already participated in expedited motions pleadings with respect to this matter, which resulted in the motions panel's decision to issue an injunction but not to expedite the appeal. Despite the motions panel's well-considered decision, Defendants want the Court to order Texas (but not themselves) to prepare yet another brief on an expedited basis over the holidays. Suffice it to say, due to pre-existing holiday commitments, Plaintiff—as well as its lawyers and support staff—cannot feasibly prepare a merits brief on an expedited basis without substantial hardship. Especially given the expedited pleadings that were already submitted on Texas's motion for an injunction pending appeal, there is no reason—let alone good cause—to require expedited briefing here.[3]

---

[3] Additionally, Defendants propose a schedule requiring Texas to file its opening brief on January 12, 2024. Among other pressing matters, undersigned counsel of record is scheduled to present oral argument in the U.S. Supreme Court on January

10

## III. Expediting This Appeal Would Be Fruitless Because Defendants Are Unlikely to Succeed on Appeal.

Finally, expedited briefing of this appeal is inappropriate because Texas's likelihood of success on appeal is beyond serious dispute. The district court declined to convert its TRO to a preliminary injunction based solely on a technical misunderstanding of Section 702's immunity waiver; the district court found for Texas in all other relevant respects. Thus, the motions panel correctly explained that Texas was entitled to an injunction pending appeal because Section 702 waives sovereign immunity for Texas's state-law conversion and trespass to chattels claims and "[t]he district court legally erred by ruling otherwise." Order at 9.

The motions panel's analysis demonstrates the futility of expediting this appeal in view of Section 702's broad waiver of federal sovereign immunity. Section 702 of the APA provides in relevant part:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702. As this Court has explained, this broad language "generally waives" sovereign immunity. *Apter v. DHHS*, 80 F.4th 579, 589 (5th Cir. 2023).

Analyzing the plain statutory text, the motions panel held that "Section 702 plainly waives immunity for Texas's trespass to chattels claim." Order at 8. "That

---

16, 2024, *see Devillier v. Texas*, No. 22-913, as well as to file a merits brief in the U.S. Supreme Court on January 16, *see NetChoice, LLC v. Paxton*, No. 22-555.

11

claim was brought as '[a]n action' in federal court; it 'seek[s] relief other than monetary damages'; and it 'stat[es] a claim' that a federal agency's officials and employees 'acted or failed to act in an official capacity or under color of legal authority.'" *Id.* "Accordingly, Texas's claim 'shall not be dismissed nor relief therein be denied on the ground that it is against the United States.'" *Id.* at 8-9 (quoting 5 U.S.C. § 702). "The district court legally erred by ruling otherwise." *Id.* at 9. And the district court erroneously applied principles of statutory construction in favor of retaining sovereign immunity because there is "no ambiguity" to resolve: "Section 702's plain terms waive sovereign immunity for 'any suit' seeking nonmonetary relief in federal court." *Id.* (citation omitted).

Moreover, this Court—"always chary to create a circuit split," *Alfaro v. Comm'r of Internal Rev.*, 349 F.3d 225, 229 (5th Cir. 2003)—is unlikely to hold otherwise on appeal. "Numerous federal circuits follow this plain-language reading of § 702." Order at 9. The motions panel correctly noted (at 9-10) that Defendants' contrary interpretation would bring this Circuit's precedent into conflict with precedent from multiple federal circuits, which have held that "the waiver of sovereign immunity in section 702 extends to all nonmonetary claims against federal agencies and their officers, regardless of whether or not the cases seek review of 'agency action' or 'final agency action.'" *Treasurer of N.J. v. U.S. Dep't of Treasury*, 684 F.3d 382, 397 (3d Cir. 2012); *see also* Order at 9-10 & n.6 (citing, *inter alia*, *Trudeau v. FTC*, 456 F.3d 178, 186 (D.C. Cir. 2006)); *id.* at 10–11 (noting Defendants' arguments have "been rejected by our sister circuits" like the Second and Seventh); *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 620 (D.C. Cir. 2017)

12

(rejecting federal agency's "argument that § 702 does not waive its immunity from suit for state law claims" because "the APA's waiver of sovereign immunity applies to any suit whether under the APA or not"). Because Defendants do not "meaningfully engage with the plain language of § 702 or with the precedents applying it," Order at 10, an expedited appeal would be fruitless.[4]

The motions panel also correctly rejected Defendants' alternative arguments. First, Defendants' argument that the Federal Tort Claims Act provides the exclusive remedy for state-tort violations has "no purchase in the language of the FTCA and has been rejected by [this Court's] sister circuits." *Id.* at 10-11 (citations omitted). Second, Defendants cannot claim governmental immunity because recent Supreme Court precedent "clarif[ies] that the intergovernmental immunity doctrine only prohibits state laws 'that *either* regulat[e] the United States directly *or* discriminat[e] against the Federal Government or those with whom it deals.'" *Id.* at 11 (quoting *United States v. Washington*, 596 U.S. 832, 838-39 (2022)). Here, "Texas is neither directly regulating the Border Patrol nor discriminating against the federal government." *Id.* And *Washington* repudiates Defendants' argument (at 5-6) that state law can never "retard" federal operations in view of the Supremacy Clause. 596 U.S. at 838-39. Third, the panel rejected Defendants' argument that an

---

[4] The motions panel also observed that while the Fifth Circuit "does not appear to have addressed this § 702 issue directly," this Court's precedent has "favorably cited both the D.C. Circuit's *Trudeau* decision, as well as the 7th Circuit's *Michigan v. U.S. Army Corps of Engineers* decision, [667 F.3d 765, 775 (7th Cir. 2011),] both of which adopt a plain-language reading of § 702." Order at 10 n.6.

13

injunction was barred by 8 U.S.C. § 1252(f)(1). "To cut Texas's c-wire, Defendants did not rely on any of the statutes covered [in § 1252(f)(1)]. Instead, they relied on 8 U.S.C. §§ 1103(a)(3) and 1357(a)(3), neither of which are covered." Order at 11.

Having determined that Texas was likely to succeed on the merits of its trespass-to-chattels claim, the motions panel also correctly determined that the remaining *Nken* factors support an injunction pending appeal.[5] There was "no error, clear or otherwise, in [the] finding" that Texas would suffer irreparable harm from the "loss of control and use of its private property." *Id.* at 12 (citation omitted). Indeed, the district court—after making extensive findings of fact—correctly concluded that "compensation for past injury cannot adequately redress the prospect of continuing or future harm for which the only appropriate remedy would be injunctive relief." *Id.* at 12-13. The public interest likewise weighed heavily in favor of an injunction because "[t]here is generally no public interest in the perpetuation of unlawful agency action" and there is "substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *Id.* at 13-14. "The district court found that the Border Patrol exceeded its authority by cutting Texas's c-wire fence for purposes other than a medical emergency, inspection, or detention," and the public interest favors "clear protections for property rights from government intrusion and control." *Id.* at 14. Accordingly, the

---

[5] Because the motions panel concluded that Texas was likely to succeed on its trespass-to-chattels claim, it did not reach Texas's alternative APA claims that Defendants have acted arbitrarily and capriciously and that Defendants have acted *ultra vires*. *Id.* at 12 & n.7.

panel "f[ound] no abuse of discretion in the district court's weighing of the public interest prong." *Id.*

Because Defendants cannot show error, let alone clear error, expedited consideration of this appeal is unwarranted. As the motions panel recognized, this matter does not warrant expedited briefing—particularly given the tailored scope of the panel's injunction pending appeal—and should be resolved using the ordinary briefing process. Nothing in Defendants' motion undermines that conclusion.

## Conclusion

The Court should deny Defendants' motion and permit this appeal to proceed in the ordinary course.

| | |
|---|---|
| Ken Paxton<br>Attorney General of Texas | Respectfully submitted.<br><br>/s/ Aaron L. Nielson |
| Brent Webster<br>First Assistant Attorney General | Aaron L. Nielson<br>Solicitor General |
| Office of the Attorney General<br>P.O. Box 12548 (MC 059)<br>Austin, Texas 78711-2548<br>Tel.: (512) 936-1700<br>Fax: (512) 474-2697 | Ari Cuenin<br>Deputy Solicitor General<br><br>J. Andrew Mackenzie<br>Assistant Attorney General<br><br>Counsel for Plaintiff-Appellant |

## Certificate of Service

On December 22, 2023, this document was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Aaron L. Nielson  
Aaron L. Nielson

## Certificate of Compliance

This document complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 3,957 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Aaron L. Nielson  
Aaron L. Nielson