No. 23-50869

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

STATE OF TEXAS,

*Plaintiff-Appellant*,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,

*Defendants-Appellees*.

**FEDERAL GOVERNMENT'S REPLY IN SUPPORT OF
MOTION TO EXPEDITE APPEAL**

As set out in the federal government's motion to expedite this appeal, *see* 5th Cir. Dkt. 53 (Mot.), the United States is currently subject to an unprecedented injunction that invokes state tort law to restrict the activities of federal law enforcement officers at the border.  The Court need not agree that the injunction is barred by the Supremacy Clause—or the numerous other independent barriers to injunctive relief that the United States has asserted—to recognize that the case presents extraordinarily consequential questions warranting this Court's expeditious review.  Texas's arguments to the contrary, *see* 5th Cir. Dkt. 59 (Opp.), do not withstand even minimal scrutiny.

1.      Texas suggests that this Court has already determined that expedition is unwarranted, such that the United States' motion to expedite is functionally a motion seeking rehearing.  *See* Opp. at 6-7.  That is not correct.  The order granting Texas's

motion for an injunction pending appeal stated that Judge Haynes did not join the order and would have taken a fundamentally different (and entirely sua sponte) route to address Texas's motion, deferring resolution of the injunction request to a merits panel as part of an expedited appeal. *See* 5th Cir. Dkt. 49-2 at 1 n.1. The panel majority, however, nowhere addressed expedition—understandably, as neither party had at that point requested expedition and the question was thus not before the panel. Texas's contention that the panel preemptively (and silently) rejected a request that the United States had not yet made is difficult to fathom; this motion is the first time that this Court has been presented with a request for expedition of this appeal.

    2.    Texas suggests that expedition is unnecessary because this Court's injunction permits Border Patrol to cut Texas's wire in the event of a medical emergency. *See* Opp. at 8. At the outset, that exception does nothing to address the respects in which the injunction limits federal agents' ability to enforce federal law by preventing them from disturbing the literal barriers standing between them and the people they are charged with apprehending. Beyond that, as the United States has explained, this exception—while important—is inadequate, because it can take 10 to 30 minutes to cut through Texas's layers of razor wire, 5th Cir. Dkt. 25-2 Ex. L 132, and Border Patrol's few small boats (which can only carry a handful of passengers) may be located miles away, *id.* at 129-31. The Rio Grande is an unpredictable river with varying depths and powerful currents, *id.* at 121, 123, and if Border Patrol cannot take steps to access the border until someone is already drowning, it may be too late

to render life-saving aid. That is why Border Patrol agents prefer to "be as proactive as possible" when they "anticipate an emergency may arise." *Id.* at 122; *see also id.* at 128 (describing situation where "it was only a matter of time before more people were going to be swept away"). The issue is not that providing emergency relief may "require some reallocation of resources," Opp. at 9; it is that if Border Patrol has to wait until someone is visibly drowning or otherwise experiencing a time-sensitive medical emergency to attempt a rescue, that person may die or suffer serious physical injury before Border Patrol agents can do anything about it. Even if this Court ultimately differs in its view regarding federal law-enforcement activities at the border, the United States' warnings about drownings and other injuries warrant prompt consideration.

3. Texas observes that the prohibition on Border Patrol cutting the wire has largely been in place since October 30, *see* Opp. at 8, but that is an argument in favor of expedition, not against. The United States was subject to an unappealable *ex parte* temporary restraining order altering the status quo for weeks in district court, *see* D. Ct. Dkt. 9, 33, and contrary to Texas's suggestion (Opp. at 8), the United States refused to agree to extend that order beyond the two days necessary to schedule a second hearing that the district court ordered. *See* D. Ct. Dkt. 36; *see also* Nov. 21, 2023 Transcript at 6 (explaining that "the government's not going to be able to agree to extend the TRO," despite the district court's statement that "it's either that [agree to an extension] or a show cause order for contempt for failure to comply with" the

3

court's order to produce at least hundreds of thousands of documents before the order expired). The United States was also subject to an *ex parte* injunction of this Court—once again, an order *altering*, not maintaining, the status quo, *cf.* Opp. at 8, 10—for more than two weeks, *see* 5th Cir. Dkt. 38. The fact that the United States was subject to restraints ordered on an *ex parte* basis for as long as it was is a reason to afford the United States expeditious resolution on the merits, not a reason to leave the United States subject to a temporary injunction for still more months

    4.    Texas points to commitments over the holidays and the press of other business. *See* Opp. at 10 & n.3. Lawyers for the federal government are also busy with numerous other matters, and expedited litigation in late December is no one's first choice. As set out in the federal government's motion, however, the United States has proposed a schedule under which Texas would file its brief as the appellant more than six weeks after this case was docketed, which would leave Texas ample time to prepare an opening brief—including nine business days in the new year alone. That schedule is more generous than the schedules that this Court has imposed in similarly important litigation. *See* Mot. at 6. Five lawyers have appeared in this Court on Texas's behalf, leaving little doubt that Texas—which filed a 15-page opposition to the government's expedition motion one day later—could comply with the briefing schedule proposed by the United States. And given that Texas has seen fit to request *same-day* injunctive relief from this Court in this case, it is surprising that the State

would now suggest that the United States' request that this case be heard within several *months* is inappropriate.

5. Texas also suggests that expedition is inappropriate because the United States is unlikely to succeed on appeal. *See* Opp. at 11-15. Texas is wrong—on the Supremacy Clause, *see, e.g.*, *Johnson v. Maryland*, 254 U.S. 51, 56-57 (1920); on sovereign immunity, *see, e.g.*, *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 216 (2012); and on 8 U.S.C. § 1252(f), *see, e.g.*, *Garland v. Aleman Gonzalez*, 596 U.S. 543, 549-50 (2022). Yet a motions panel need not resolve these disputes to grant this scheduling motion; for present purposes, it suffices to observe that these issues are highly consequential and hotly disputed, and that they arise in a context in which the United States asserts that the injunction impairs federal law enforcement and imperils human life.

6. Finally, intervening developments in district court strongly support the United States' request for expedition. On December 22, 2023, the district court denied the government's motion to stay proceedings in that court pending appeal, electing instead to extend the government's answer deadline to March 21, 2024, "in the interest of judicial economy" and with the expectation that "matters pending in this Court may be clarified by any decision of the Fifth Circuit Court of Appeals."

D. Ct. Dkt. 73. Absent expedition as proposed herein, this Court will be unable to provide guidance to the district court on that schedule.

Respectfully submitted,

MELISSA N. PATTERSON
 /s/ Steven A. Myers
STEVEN A. MYERS
 *Attorneys, Appellate Staff*
 *Civil Division*
 *U.S. Department of Justice*
 *950 Pennsylvania Ave., NW*
 *Washington, DC 20530*
 *202-305-8648*

Dated: December 26, 2023

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this filing complies with the requirements of Federal Rule of Appellate Procedure 27(d) because it has been prepared in 14-point Garamond, a proportionally spaced font. I further certify that it complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) because it contains 1257 words according to the count of Microsoft Word.

*/s/ Steven A. Myers*
STEVEN A. MYERS
Counsel for Appellees

**CERTIFICATE OF SERVICE**

I hereby certify that, on December 26, 2023, I electronically filed the foregoing with the Clerk of the Court by using the appellate CM/ECF system. I further certify that the participants in the case are CM/ECF users and that service will be accomplished by using the appellate CM/ECF system.

*/s/ Steven A. Myers*
STEVEN A. MYERS
Counsel for Appellees
